UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| CHRISTOPHER ALBERTINI, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | Civil No. 10-262-P-H |
| | ) | Crim. No. 09-15-P-H |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Christopher Albertini has filed a 28 U.S.C. § 2255 motion challenging his attorney's performance on the grounds that counsel should have pursued a motion to suppress and did not assure that Albertini had access to discovery that would have helped justify such a motion. Albertini pled guilty to one count of possessing cocaine with the intent to distribute and received a sentence of thirty-six months, with three years of supervised release to follow. For the reasons that follow, I recommend that the Court deny the motion.

**Legal Standard**

Strickland v. Washington, 466 U.S. 668 (1984), and Hill v. Lockhart, 474 U.S. 52, 59 (1985) govern the resolution of Albertini's Sixth Amendment claim. "In order to prevail, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from." Id. In the context of guilty pleas, in order to satisfy the prejudice requirement, the petitioner must show

there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would not have plead guilty and would have insisted on going to trial instead. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

**Prosecution Version**

Search of Cooperating Witness's Apartment

On October 29, 2008, U.S. Drug Enforcement Administration (DEA) task force agents (TFA) established surveillance at the apartment of an individual (hereinafter referred to as CW). While conducting surveillance, the TFAs were able to determine that CW was on probation for a prior state OUI conviction and that CW was currently in violation of the conditions of his/her release.

The TFAs approached CW's residence to effectuate CW's arrest. As they approached, CW came out of the residence, saw the officers approaching and ran back into his/her apartment slamming the door. A short time later, CW was arrested inside his/her apartment. A search of CW's apartment resulted in the recovery of, among other things, the following: (1) $19,783 in U.S. currency; (2) 2 plastic bags collectively containing approximately 32 grams of cocaine; and (3) a small digital scale.

CW was interviewed and agreed to cooperate. CW identified his/her source of cocaine as two black males – Wolker Georges and "Chris" – and said that the pair lived in a condominium complex in Tamarlane in Portland. CW also said that CW calls (207) 313-1203 when ordering drugs from Georges and "Chris" and that the cocaine recovered from CW's apartment was left over from the last time he/she picked up cocaine from Georges and "Chris".

Search of Defendant's Apartment

CW agreed to drive to Tamarlane and point out the apartment where Georges and "Chris" live. Once they arrived at Tamarlane, CW pointed out two vehicles parked in the driveway of 40 Tamarlane. One registration came back to Wolker Georges; the other came back to the defendant. Under the direction of agents, CW then placed a monitored telephone call to (207) 313-1203. During this call, the defendant told CW that he/she could sell CW cocaine in about 25 minutes.

About 30 minutes later, CW went to the front door of 40 Tamarlane and knocked. The door was opened by the defendant. The agents then entered and secured the premises. The defendant was detained on the main floor and Wolker Georges was located and detained on the second floor.

While securing the residence, a DEA agent entered the defendant's bedroom and observed a handgun on a shelf in the bedroom closet. A second handgun was recovered from Georges' bedroom.

A short time later, agents sought and obtained a state search warrant to search the residence at 40 Tamarlane. While searching the apartment, DEA agents

2

located and seized a black Nokia cell phone (207) 313-1203 – the same phone that CW made contact with the defendant on. This phone was located on a coffee table in the living room area. Also located in the living room area was a small digital scale and bills addressed to the defendant. In the kitchen area, DEA agents located 128.5 grams (net weight) of cocaine, a large digital scale, and cutting agents. The cocaine recovered from the kitchen area was tested by a DEA forensic chemist, resulting in a positive reading for the presence of cocaine.

  A search of the defendant's bedroom resulted in the recovery of a small black safe in the same closet where the gun had been found earlier. That safe was found to contain $7,000 in U.S. Currency and one plastic bag containing additional amounts of cocaine. Also recovered from that same closet was a jacket which had a pocket containing approximately $5,490 in U.S. currency, a small digital scale and a second baggie containing cocaine. Also recovered from the defendant's bedroom was a court summons addressed to the defendant and his photo identification.

  The evidence would also show that both the defendant and Georges signed the lease for the apartment at 40 Tamarlane and that they both were residing there on October 29, 2008.

(Prosecution Version at 1-3, Doc. No. 25.)

**Discussion**

In his response to the United States' motion for summary dismissal, Albertini's argument focuses on the warrantless entry into his condominium. For instance, he summarizes:

> Reasonable competent counsel would have reviewed Albertini's discovery material and would have advised Albertini of the violations, and, furthermore would have moved to contest the illegality of the agents' unlawful warrantless entry. A warrantless entry with no basis of probable cause, and to where exigent circumstances w[ere] not present, to which during the security sweep agents discovered paraphernalia, and then applied for search warrants is highly unconstitutional. Due to agents' conduct Albertini was [entitled] to an evidentiary and or suppression hearing.

(Movant's Resp. at 15.) It is Albertini's theory that at the time that the agents entered his premises "they did not have probable cause to obtain a warrant to enter Albertini's apartment without one, but had reasonable suspicion throughout the whole investigation that stemmed from an arrested individual who immediately became a confidential informant. With respect to the

3

law had they had probable cause they would have followed proper procedure and obtained a warrant prior to entering Albertini's apartment." (Id. at 13-14.)

The United States argues that Albertini's attorney probably decided to reject the motion to suppress route because of the questionable hope of success, particularly because of the ability of the government to argue an exigent circumstance justification for the protective sweep and the good faith exception to suppression. This Court's role in the context of this § 2255 motion is not to determine whether the police conducted a valid search, but rather to analyze counsel's decision not to file a motion to suppress in a "highly deferential" manner. United States v. Ortiz, 146 F.3d 25, 28 (1st Cir. 1998) (quoting Strickland v. Washington, 466 U.S. 689). The current record is devoid of any explanation from counsel as to why he chose not to file such a motion, but in my view the record speaks for itself and the United States' proffered explanation is the only one I have considered.[1]

As a preliminary matter Albertini's contention that the police did not have probable cause to search the premises when they first made entry to conduct the protective sweep is irrelevant. A state court judge found that there was probable cause to search the condominium on the basis of the information garnered before the officers made their entry. The actual search of the

---

[1] Defense counsel's representation of defendant was exemplary. (See Transcript of Sentencing Hearing, Doc. No. 43.) The court found the guideline range to be 51 to 63 months with the two level firearm enhancement, but the court imposed a variant sentence of 36 months imprisonment. Defense counsel's argument was that the two level enhancement for the firearm, while appropriate under the guidelines given the burden of proof placed upon the defendant, really did not fit with the facts of this offense. (Sentencing Tr. at 7-8.) The only remote benefit to be obtained from a motion to suppress (and it was a highly unlikely that such a motion would have been granted) would have been suppression of the firearm discovered during the protective sweep. The other evidence was seized pursuant to a state search warrant and there is nothing to suggest the warrant could have been challenged. Indeed the prosecution version of the offense, set forth above, establishes that the officers had probable cause to obtain the search warrant for the residence prior to the protective sweep. Albertini does not point to anything in the discovery he has now received and reviewed that casts any doubt on the validity of the search warrant or on his own guilt. Thus defense counsel, even if he had successfully mounted a challenge to the firearm and gotten it suppressed from use as evidence at trial, would have been back in the same place at the sentencing hearing because the fact of the firearm's discovery would have been included in the presentence report and probably used to enhance the sentence in spite of its suppression from use at trial. And, of course, following that course of action would have resulted in loss of the three points for acceptance of responsibility.

residence and the resultant discovery of the incriminating scales, cocaine, cellphone, and cash were done pursuant to a search warrant. Albertini admitted as much during his Rule 11 proceeding when he admitted to the prosecution version of the offense. The officers didn't find anything during the protective sweep, except for the two firearms which were secured during the warrantless entry. It is a virtual certainty based on this record that the good faith exception would have applied to all of the seized evidence, except for the firearms. United States v. Woodbury, 511 F.3d 93, 99 (1st Cir. 2007). Albertini has made no showing that he would not have pled guilty to these charges, even if the two firearms were excluded from evidence. In fact, it would have been foolhardy to proceed to trial given that the three points for acceptance of responsibility would have evaporated.

    That leaves the question of whether counsel's failure to challenge the protective sweep and the resultant seizure of two firearms was so deficient a performance as to result in ineffective assistance. In 2008 when counsel was considering whether or not to file a motion to suppress the First Circuit Court of Appeals had already decided United States v. Martins, 413 F.3d 139, 150 (1st Cir. 2005) which cited with approval United States v. Taylor, 248 F.3d 506, 513 (6th Cir. 2001)(holding that because officers can constitutionally secure an area while awaiting a search warrant to ensure that evidence will not be destroyed, "it follows logically that . . . the police may conduct a limited protective sweep [of the area] to ensure the safety of those officers"). There does not appear to have been any legal basis upon which Albertini's counsel could have challenged the warrantless entry. This was a quickly arranged cocaine buy based upon reliable information from a cooperating witness, not a police created exigency. Part of the reliability of the cooperating witness's information is established by the speed with which Albertini set up the buy when the cooperating witness called him. The exigent circumstances here were not

5

"created" by the police, but rather by the exigencies of the cocaine marketplace. Once police had the corroboration that Albertini was ready to deal in twenty-five minutes, time was of the essence. In my view the firearms would not have been excluded from trial even if a motion had been filed.

Even more to the point, the United States could have easily proven guilt without the firearms, relying upon the testimony of the cooperating witness and the evidence seized pursuant to the warrant which was in no way the fruit of the protective sweep. Albertini would have gained nothing by having the firearms excluded from trial and if he went to trial he would have lost the three points for acceptance of responsibility. That defense counsel chose to minimize the significance of the two firearms at the sentencing hearing rather than try to get them suppressed was not just a sound tactical decision, it was the best tactical choice that competent defense counsel would have made.

## Conclusion

For the reasons stated above, I recommend that the Court deny Albertini 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Albertini files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 5, 2010